UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON


CIVIL ACTION NO. 08-307-GWU


MAXIE A. HENSON,                                                          PLAINTIFF,


VS.                       **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                          DEFENDANT.


**INTRODUCTION**

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Disability Insurance Benefits (DIB). The appeal is currently before the court on cross-motions for summary judgment.

**APPLICABLE LAW**

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 855 (6th Cir. 1990). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Crouch, 909 F.2d at 855.

08-307  Maxie A. Henson

The regulations outline a five-step analysis for evaluating disability claims. See 20 C.F.R. § 404.1520.

The step referring to the existence of a "severe" impairment has been held to be a <u>de minimis</u> hurdle in the disability determination process.  <u>Murphy v. Secretary of Health and Human Services</u>, 801 F.2d 182, 185 (6th Cir. 1986).  An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience."  <u>Farris v. Secretary of Health and Human Services</u>, 773 F.2d 85, 90 (6th Cir. 1985).  Essentially, the severity requirements may be used to weed out claims that are "totally groundless."  <u>Id</u>., n.1.

Step four refers to the ability to return to one's past relevant category of work, the plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work.  <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983).  Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  <u>E.g., Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which

2

08-307  Maxie A. Henson

appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e);

3

08-307  Maxie A. Henson

however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Maxie A. Henson, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of generalized osteoarthritis and fibromyalgia, being status post a myocardial infarction in August, 2005 with stent placement, a panic disorder, an anxiety disorder, and an adjustment disorder with depressed mood. (Tr 14).[1]  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mrs. Henson retained the residual functional capacity to perform a significant number of light and sedentary jobs

---

[1]There are three volumes of transcripts in the present case, which the Commissioner designates as the original transcript (Tr.), numbered page 1 through 337, "Supplemental Transcript I," (SI), numbered page 338 through 427, and "Supplemental Transcript II," (SII), numbered page 1 through 505.

4

08-307  Maxie A. Henson

existing in the economy, and therefore was not entitled to benefits.  (Tr. 15-21).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether the plaintiff, a 44-year-old woman with one year of college education and work experience as a transit van driver and office helper, could perform any jobs if she were limited to "light" level exertion, with a need to alternate sitting and standing at 45 minute intervals, and also had the following non-exertional restrictions.  (Tr. 330).  She: (1) could not climb ladders, ropes, or scaffolds, or be exposed to heat or cold; (2) could occasionally climb ramps and stairs; (3) would be limited to simple, one- and two-step instruction jobs with "no timed pressure" of a routine, repetitive nature; (4) would have a limited but satisfactory ability to relate to coworkers and supervisors, deal with stress, and handle detailed instructions; and (5) would have no useful ability to deal with the public.  The VE testified that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies.  (Tr. 331-2).  Adding a "severely limited but not precluded" ability to deal with work stresses would not affect the job numbers.  (Tr. 331).  Nor would a moderate restriction on manipulative ability.  (Tr. 333).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.  There is an additional consideration in that the plaintiff had previously filed disability applications in November, 2003, which were

5

08-307  Maxie A. Henson

denied in an ALJ decision of August 25, 2005 (Tr. 33-41), and not further appealed. The ALJ in the present case found that res judicata would apply through that date. Thus, although the plaintiff alleged an onset date of October 9, 2003 (SII 82), only the period from August 26, 2005 through the date of the current decision on May 20, 2008 is at issue.

The plaintiff alleged disability due to chronic lower back pain, fibromyalgia, neck and shoulder problems, panic attacks, and heart problems.  (SII 122).

From a historical perspective, the evidence shows that the plaintiff's treating family physician, Dr. Anita Cornett, had referred her to Dr. Andrew Ruthberg, a rheumatologist, in July, 2002 "with a working diagnosis of fibromyalgia."  (SII 160). Medications and physical therapy had been tried, with limited benefits.  (Id.). Laboratory testing, including a sedimentation rate, rheumatoid factor, and anti-nuclear antibodies, had been negative.  (Id.).  After examination, Dr. Ruthberg stated that he fully agreed with the diagnosis of fibromyalgia, since the plaintiff had appropriate and widespread pain complaints with 14 out of a possible 18 typical tender points.  (SII 161).  He suggested possible treatments, with the caveat that "[e]verybody involved has to realize that very few patients with fibromyalgia ever get fully well," but did not list functional restrictions.  (SII 162).

During the period of time relevant to the present application, Dr. Cornett continued to treat the plaintiff for fibromyalgia, among other problems.  (SII 450-8,

6

08-307  Maxie A. Henson

377-96).  Medications prescribed included the narcotic pain reliever Lortab, Prozac, Librium, and Elavil.  (SII 463).

Dr. Robert Hoskins conducted a consultative physical examination of Mrs. Henson on June 7, 2006.  (SII 286).  He noted an elevated blood pressure and tenderness at several points, but the plaintiff seemed unsure about tenderness at other locations.  (SII 287-8).  Forward flexion was limited to 60 degrees.  (SII 288). There were no abnormalities in sensation or reflexes, the plaintiff was able to perform heel and toe walking and tandem walking, and was able to sit/squat to, and stand from, a 19-inch chair.  (Id.).  She transferred to and from an examination table "without remarkable difficulty."  Dr. Hoskins commented that his examination did not either exclude or confirm the diagnosis of fibromyalgia because "the location of the pain may shift over time and a person may have fibromyalgia even if they don't meet all the criteria."  (Id.).  In terms of functional restrictions, he stated that Mrs. Henson was "not fit for heavy lifting, heavy labor, [or] frequent stooping, bending, squatting, and crawling" based on his assessment.  Her musculoskeletal problems were "likely to somewhat limit carrying, light lifting or some bending, squatting, crawling, climbing, and probably somewhat [limited] in respect to handling and [fine] manipulations primarily based on her history."  He recommended correlation with other medical records and opinions.  (Id.).

7

08-307  Maxie A. Henson

A state agency reviewing physician, Dr. John Rawlings, examined the evidence on August 5, 2006 and concluded that Mrs. Henson would be capable of light level exertion with a need to alternate sitting and standing every 30 to 45 minutes, consistent with the 2005 ALJ decision.  She could occasionally climb ladders, ropes, and scaffolds and needed to avoid concentrated exposure to extreme cold and heat.  Dr. Rawlings said that the opinion of Dr. Hoskins was given great weight, except for the fact that there was no evidence the plaintiff had any limitation of handling and fingering.  (SII 327).  Another state agency physician, Dr. Carlos X. Hernandez, affirmed Dr. Rawlings's opinion in February, 2007.

Subsequently, Dr. Cornett submitted additional office notes, which continued to note chronic pain secondary to fibromyalgia.  (SII 454).  She also submitted a new functional capacity assessment on July 24, 2007 limiting her patient to lifting less than 10 pounds occasionally and frequently, standing and walking less than two hours in an eight-hour work day with a need to alternate sitting and standing, having limitations on pushing and pulling with both the upper and lower extremities, occasionally performing all postural activities, having a limited ability to reach, handle, and finger objects, and also noted limitations in working around temperature extremes, humidity, and hazardous machinery or heights.  (SII 468-71).  In support of her restrictions, Dr. Cornett cited chronic low back pain, fibromyalgia,

08-307  Maxie A. Henson

degenerative arthritis, depression, fatigue, and intermittent numbness.  (SII 469).
The plaintiff had a decreased lumbar range of motion and lumbar tenderness.  (Id.).

As previously noted, the ALJ accepted that fibromyalgia was a "severe"
impairment.  He declined to accept Dr. Cornett's restrictions, saying only that the
physician "did not point to objective medical findings but rather to the claimant's
complaints of pain" and provided no explanation for limiting the use of the upper
extremities.  (Tr. 19).  He did adopt functional limitations that were consistent with
the previous ALJ decision and with Drs. Rawlings and Hernandez.

As the Sixth Circuit has held, a material failure by an ALJ to follow the
procedural requirements of 20 C.F.R. § 404.1527 is grounds for reversal even if the
opinion is otherwise supported by substantial evidence.  Wilson v. Commissioner
of Social Security, 378 F.3d 541, 546 (6th Cir. 2004).  The court noted that the
regulation requires the ALJ to consider a number of factors, including the length of
the treatment relationship, frequency of examination, nature and extent of the
treatment relationship, supportability of the opinion, consistency with the record as
a whole, and any specialization of the treating source.  Id. at 544. The ALJ's
rationale "must be sufficiently specific to make clear to any subsequent reviewers
the weight the adjudicator gave to the treating source's medical opinion and the
reasons for that weight."  Social Security Ruling (SSR) 96-2p, p. 5.

08-307  Maxie A. Henson

In the present case, the factors set out in the regulation were not explicitly considered in rejecting the treating physician's opinion.  The sole objections provided by the ALJ were that Dr. Cornett cited complaints of pain rather than objective medical findings, and the lack of an explanation for limiting use of the upper extremities.  (Tr. 19).  Although Dr. Cornett did refer to complaints of pain, she also provided a list of the plaintiff's diagnoses and mentioned some objective evidence, namely limitation of range of motion and lumbar tenderness.  Therefore, in addition to not considering all of the factors in § 404.1527, the reasons given are not accurate.[2]

In view of the fact that a diagnosis of fibromyalgia is involved, it should also be noted that "fibromyalgia patients present no objectively alarming signs" and "manifest normal muscle strength and neurological reactions and have a full range of motion."  Preston v. Secretary of Health and Human Services, 854 F.2d 815, 820 (6th Cir. 1988). The Sixth Circuit held in Preston that under certain circumstances the elimination of other diagnoses, identification of focal tender points, and observation of other classic symptoms of fibromyalgia satisfies the subjective pain

---

[2]The court recognizes that there may be good reasons to reject Dr. Cornett's opinion and accept the conclusions of the non-examining reviewers, but the Sixth Circuit has held that "to recognize substantial evidence as a defense to non-compliance with § 1527 would afford the Commissioner the ability [to] violate the regulation with impunity and render the protections promised therein illusory."  Wilson, 378 F.3d at 546.  Nor is the treating source's opinion so patently deficient that the Commissioner could not possibly credit it.  Id. at 547.

08-307  Maxie A. Henson

standard set forth in <u>Duncan v. Secretary of Health and Human Services</u>, 801 F.2d 847, 853 (6th Cir. 1986).  Neither the state agency reviewers nor the ALJ appear to take into account the unusual status of fibromyalgia patients in discussing the objective evidence supporting her allegations of limitations.  <u>See</u>, <u>e.g.</u>, <u>Rogers v. Commissioner of Social Security</u>, 486 F.3d 234, 247-9 (6th Cir. 2007).  Therefore, the ALJ's conclusions are not supported by substantial evidence.

The decision will be remanded for further consideration.

This the 31st day of July, 2009.

**Signed By:**

*G. Wix Unthank*

**United States Senior Judge**